UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE G. M. L.,[1]

        Petitioner,

    v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

        Respondents.

No. 1:26-cv-00047-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Jose G. M. L.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 5). Respondents filed an opposition.[2] (ECF No. 8.) For the reasons set forth below, the Court GRANTS in part Petitioner's request for injunctive relief. Respondents are enjoined from continuing to detain Petitioner for more than seven days without a bond hearing.

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    Petitioner's counsel untimely replied without explanation for delay and without a motion to extend time to file. (ECF No. 14.) The Court did not consider the brief in its ruling.

1

## I. FACTUAL BACKGROUND[3]

Petitioner is a citizen of Mexico who came to the United States when he was approximately eight years old. (ECF No. 8-1 at 3, 33.) Petitioner has lived in the United States continuously for 34 years — nearly his whole life. (ECF No. 1 at 5.) Petitioner financially supports his family, including a wife and five children; four of his children are minors ranging from ages six to fifteen, and the eldest child is serving as a United States Marine. (*Id.*) Petitioner asserts he has always paid his taxes. (*Id.*) According to Petitioner, in 2001, he started the process of applying for legal permanent residence and adjustment of status through his father, who is a U.S. citizen. (ECF No. 1 at 5; ECF No. 8-1.) In 2024, Petitioner received Government authorization to work. (ECF No. 1 at 6.)

The details are sparse as to Petitioner's apprehension by U.S. Immigration and Customs Enforcement ("ICE") and his immigration history.[4] Petitioner was detained on August 16, 2025. (ECF No. 1 at 5.) At that time there were no removal proceedings pending against him. According to public docket information, three days after his detention, Respondents instituted removal proceedings against Petitioner.[5]

Petitioner has now been detained for over six months without a hearing. (*Id.* at 2.) Petitioner challenges the lawfulness of his prolonged civil detention and seeks immediate release or a bond hearing in the alternative. (*See id.* at 17.)

Respondents state they are detaining Petitioner without bond due to his criminal history. (ECF No. 8.) Twenty-one years ago, in 2005, when Petitioner was 21 years old, he was arrested and later convicted. (ECF No. 11-1.) Petitioner completed his six-month sentence, paid all fines and fees, completed classes and community service, and expunged his record in 2020, under California Penal Code § 123.41. (ECF No. 11-1 at 9, 12.) Since 2005 — for the last 21 years — Petitioner has not had any other encounters with law enforcement. (ECF No. 11-1 at 9, 12; ECF

---

[3] The facts are not disputed.

[4] The Court has not been informed as to the circumstances around Petitioner's arrest: how his arrest occurred, whether he received notice, or whether there was a warrant or detainer.

[5] *See* U.S. Department of Justice, Executive Office for Immigration Review, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation.

No. 8-1 at 30.)

The Court now considers whether a TRO should issue.  (*See* ECF No. 5 (construing request for immediate relief as a motion for TRO).)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.    ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A.    Likelihood of Success on the Merits

Petitioner alleges that his prolonged detention without a hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 16–17.)  Respondents' sole argument in opposition to a TRO is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), a statutory authority that does not itself provide for a bond hearing.  (ECF No. 8 at 5–8.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

3

the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.      Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. A person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). "Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey*, 408 U.S. at 482; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997)); *see also Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").

Here, Petitioner has lived in the United States continuously for 34 years and freely for at least 33.5 years. (*See* ECF No. 8-1 at 2, 33; ECF No. 11-1 at 1.) His liberty interest has been strengthened with time and the Government's conduct. Although this Court does not have a complete record of Petitioner's immigration history, Petitioner asserts he first started the process of applying for immigration relief in 2001 and would have been known to immigration authorities for at least the last 25 years. (ECF No. 1 at 5.) In 2005, Petitioner was convicted and sentenced for a six-month term of imprisonment. (ECF No. 11-1 at 1.) After his release from custody, immigration authorities did not detain Petitioner. Rather, Petitioner was reintegrated into his

4

community and continued to live freely without any encounters with law enforcement for another 21 years.  (ECF No. 11-1 at 9, 12.)  In 2024, Petitioner states the Government granted him work authorization, further supporting his liberty in the community.  (ECF No. 1 at 5.)  Thus, Petitioner has a clear interest in his continued freedom and a life free of restraint.

In a single-page opposition devoid of case law, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), without "a bond hearing or any other form of relief," effectively stripping him of his liberty.  (ECF No. 8 at 1.)  However, Petitioner's liberty interest is not defeated by statute.  Section 1226(c) of the Immigration and Nationality Act mandates detention of noncitizens who have been arrested, charged, convicted, or sentenced of certain criminal offenses.  8 U.S.C. § 1226(c).  Although the United States Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), it did not foreclose challenges to the statute as-applied to individuals.  *See Demore v. Kim*, 538 U.S. 510, 513 (2003); *Nielsen v. Preap*, 586 U.S. 392, 396, 420 (2019).  Courts in the Ninth Circuit routinely review as-applied constitutional challenges to § 1226(c) detention.  *See, e.g.*, *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025); *Perera v. Jennings* (*Perera II*), No. 21-cv-04136-BLF, 2021 WL 2400981, at *3–6 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4–7 (N.D. Cal. Mar. 31, 2023); *Arizmendi v. Kelly*, No. CV-17-4791-JAT (DMF), 2018 WL 3912279, at *4 (D. Ariz. July 23, 2018), *report and recommendation adopted*, No. CV-17-04791-PHX-JAT, 2018 WL 3872228 (D. Ariz. Aug. 15, 2018).  Here, Petitioner challenges his detention under 8 U.S.C. § 1226(c) without a bond as applied to his factual circumstances.  (ECF No. 1.)

Respondents do not engage with Petitioner's particular factual circumstances, nor do Respondents engage with due process requirements.  (*See* ECF No. 8.)  Respondents only allege Petitioner's criminal conviction from 2005 is the source of the deprivation of his liberty today, under § 1226(c).[6]  Despite Respondents' reliance on their statutory authority, courts consistently

---

[6]   Respondents also do not identify which criminal charge subjects Petitioner to detention under § 1226(c), but the Court presumes the charge is related to a controlled substance as the qualifying charge under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

find that detention without a bond hearing under § 1226(c) is unconstitutional, even for noncitizens with more severe convictions and shorter periods of liberty than Petitioner in this case. *See, e.g., Carballo*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (finding detention under § 1226(c) without a hearing violated due process where Petitioner lived in the community for five years after serving his sentence for murder); *Perera II*, 2021 WL 2400981, at *3–6 (same, after living at liberty for seven years post 50-month sentence for a controlled substance conviction); *Pham*, 2023 WL 2744397, at *4–7 (same, six years of liberty post-sentence for sex crime). Thus, the Court finds Respondents' assertions unavailing.

Accordingly, Petitioner has a strong liberty interest in his continued freedom from physical restraint protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690. The Court next considers what process was owed to Petitioner before depriving him of his liberty.

                            ii.        *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333 (internal quotations omitted). The Court finds these factors favor a bond hearing at minimum.

First, Petitioner has a substantial private interest in remaining free from detention, as discussed above. Petitioner has established a life in the United States over the last three decades, including two decades since serving his sentence. (ECF No. 1 at 5.) Despite that, Petitioner has now been detained for over six months (longer than his original conviction) without any opportunity to be heard.[7] (ECF No. 1 at 2; ECF No. 11-1 at 9.) During his detention, he has been

---

[7] Because Respondents have not provided Petitioner with any hearing, the Court presumes they have also not provided Petitioner with a *Joseph* hearing. "Anyone who believes that he is

6

separated from his family who he supports emotionally, physically, and financially.  (ECF No. 1 at 6.)   And he has not been able to work to support his family.  (*Id.*)  Thus, Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); *Perera II*, 598 F. Supp. 3d at 745 (quoting *Rajnish v. Jennings*, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020) ("Any length of detention implicates the same fundamental liberty interest in remaining free from imprisonment.") (cleaned up)).

Second, the risk of erroneous deprivation is considerable given Petitioner has likely not received any hearing, either pre- or post-detention.  "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community."  *Carballo*, 2025 WL 2381464, at *7 (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).  While it is not this Court's role to determine whether Petitioner is a danger or flight risk, even this limited record provides a substantial basis for an immigration judge to find that Petitioner is neither.  Petitioner was convicted of a crime he committed over two decades ago.  (ECF No. 11-1.)  He served his sentence, paid all debts, expunged his record, and has lived lawfully without any encounters with law enforcement for another 21 years.  (ECF No. 11-1 at 9, 12.)  Moreover, Petitioner has a family in the United States with whom he desires to be reunited and to continue to financially support.  (ECF No. 1 at 6.)  Thus, without a hearing to determine whether Petitioner's detention is justified, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Where no procedural safeguards have been provided, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide

---

not covered by § 1226(c) may also ask for what is known as a '*Joseph* hearing.'" *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (2018) (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).  "At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" *Id*. at 289 n.1 (alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003)).

Petitioner with procedural safeguards are negligible.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing." *Perera II*, 598 F. Supp. 3d at 746 (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)).  "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk," *Perera v. Jennings, et al. (Perera I)*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021).

Here, there is no final order of removal for Petitioner.  As discussed above, there is no evidence in the record that Petitioner is a danger to society or a flight risk.  Additionally, the Government's interest is further undermined by the 21 years it waited to detain Petitioner after his criminal conviction, and by its grant of work authorization.  Respondents have not provided any excuse or justification for waiting 21 years to detain Petitioner and institute removal proceedings for a 2005 conviction.  (*See* ECF No. 8.)  Moreover, the cost and time of procedural safeguards are minimal here.  Bond hearings are routine processes for Respondents and carry minimal burden.

On this record, the *Mathews* factors demonstrate that the Fifth Amendment Due Process Clause entitles Petitioner to a bond hearing, at a minimum.  *See Carballo*, 2025 WL 2381464, at *8.  Respondents have not provided such a hearing and are continuing to deny him one.  Therefore, Respondents have denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333.  Hence, Petitioner is likely to succeed on his claim that his detention without a bond hearing is unconstitutional.[8]

///

---

[8] The Court also notes it has serious concerns as to the constitutionality of Petitioner's arrest.  However, the Court is not able to assess due process in that context without further development of the record.

B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. He is separated from his family who relies on him for emotional, medical, and financial support. (ECF No. 1 at 6.) Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained without due process. In sum, these last two factors weigh in Petitioner's favor.

///

9

**IV.    CONCLUSION**

Accordingly, the motion for temporary restraining order is GRANTED in part. IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED in part:

    a. Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven days** from the date of this Order without a bond hearing before a neutral fact-finder at which Respondents bear the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. *See Perera I*, 2021 WL 2400981, at *6 (explaining basis for burden). The decisionmaker must also consider Petitioner's financial circumstances for bond and alternative conditions of release. *See Hernandez*, 872 F.3d at 991. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or flight risk, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the neutral fact-finder at the hearing.

    b. By **February 27, 2026**, Respondents must file a notice of compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing.

    c. If Petitioner is released, Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future. At any such hearing, Petitioner shall be allowed to have counsel present.

2. Respondents are ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner. Respondents shall

10

file responsive papers by **February 27, 2026**.  Respondents filing must include relevant portions of Petitioner's A-File, including copies of all orders of release; all detention orders, warrants, or notices; Petitioner's Form I-213; any and all transcripts or other documents relevant to the determination of the issues presented in the Petition.  Failure to timely file an answer/return will be construed as a non-opposition under L.R. 230(c).  **Petitioner may file a reply by March 4, 2026**.  The parties shall indicate in their briefing whether they request a hearing.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

3.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: February 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE