UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE G.M.L.,[1]

          Petitioner,

   v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

          Respondents.

No. 1:26-cv-00047-TLN-EFB

(A# 234-220-551)

**ORDER**

This matter is before the Court on Petitioner's Motion to Enforce Temporary Restraining Order ("TRO") (ECF No. 20) and Petition for Writ of Habeas Corpus ("the Petition") (ECF No. 1).[2] For the reasons set forth below, the Court GRANTS the motion and Petition. Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Also before the Court is Respondents' Request to Lift the "No-Transfer" Order to execute Petitioner's removal. (ECF No. 21.) An order of removal is not final or executable during the appeal period. *See* 8 C.F.R. §§ 1003.6(a) (automatic stay of order of removal during appeal period) and 1241.1(c) (absent waiver of appeal, an order of removal is not final until the expiration of time for appeal). Petitioner has provided sufficient evidence to prove he did not waive his right to appeal (ECF No. 24-1 at 4), and his appeal period has been tolled by the Board of Immigration Appeals (*see id.* at 6–8; ECF Nos. 29-1, 29-2). 8 C.F.R. § 1003.8(a)(3) (tolling deadline to cure filing fee). Therefore, Respondents cannot lawfully execute Petitioner's order of removal and their motion is DENIED. The request is also now moot given that preliminary relief is dissolved by this Order.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

This matter arises out of Petitioner's constitutional challenge to his civil immigration detention.  Petitioner first came to the United States around 1991 when he was approximately eight years old.  (ECF No. 8-1 at 3, 33; ECF No. 19 at 4.)  He has lived in this country continuously for 34 years, nearly his whole life.  (ECF No. 1 at 5.)  Petitioner has grown up here, got married, and started a family, whom he financially supports.  (*Id.*)  Petitioner has five children, four of which are minors ranging from ages six to fifteen.  (*Id.*)  The eldest child serves as a United States Marine.  (*Id.*)  Petitioner attended school to become a welder and found gainful employment as a welder and heavy machine operator.  (ECF No. 14 at 2; ECF No. 20 at 2.)  He also asserts he has always paid his taxes.  (ECF No. 1 at 5.)

For the last twenty years, Petitioner has had no criminal history or arrests.  (ECF No. 8-1 at 30; ECF No. 11-1 at 9, 12.)  However, when he was about 21 years old, in 2005 and 2006, Petitioner was convicted of violating California Health and Safety Code §§ 11352(a) (controlled substances), 11379(a) (controlled substances), 11370.2(c) (sentence enhancement), and California Vehicle Code §§ 2800.2(a) (evading peace officer), 23152(b) (DUI), and 12500(a) (driving without valid license).  (ECF No. 8-1 at 30; ECF No. 11-1.)  Petitioner completed his sentences, paid all fines and fees, and completed classes and community service.  (ECF No. 11-1 at 9, 12.)  He has had no other encounters with law enforcement since.  (*See id.*)  In 2020, Petitioner's convictions were dismissed under California Penal Code § 1203.4.[4]  (ECF No. 11-1 at 9, 12.)

Petitioner pursued immigration relief prior to his current detention.  About April 2024, Petitioner applied for adjustment of status through his father, who is a U.S. citizen.  (ECF No. 1 at 5; ECF No. 8-1; ECF No. 19 at 4.)  On August 15, 2025, Petitioner reported to a scheduled interview with U.S. Citizenship and Immigration Services ("USCIS") in support of his

---

[3]    The facts in this case are undisputed.

[4]    The Court understands Petitioner is also seeking vacatur of his convictions under California Penal Code § 1473.7 in state court, a motion that is unopposed by the local district attorney, and that may impact his immigration relief.  (ECF No. 29-2 at 5; Recording of Immigration Court Bond Hearing (February 26, 2026) (CD lodged with Clerk, ECF Nos. 22, 23) (hereafter "Hg. Rec.").)

application.  (ECF No. 19 at 3.)  At that time, there was no order of removal for Petitioner, nor were there any removal proceedings pending against him.  Nevertheless, Respondents detained Petitioner at his interview, without any notice.  (*Id.*)

Approximately five months into Petitioner's detention, on January 14, 2026, an immigration judge ("IJ") denied Petitioner a bond hearing for lack of jurisdiction based on the U.S. Department of Homeland Security's changed policy as to mandatory detention for "applicants for admission."  (ECF No. 19 at 8–9.)

Petitioner has filed the instant Petition challenging the lawfulness of his civil immigration detention without a hearing and requested immediate preliminary injunctive relief.  (ECF No. 1.)  On February 19, 2026, this Court granted Petitioner's request for preliminary injunctive relief, finding Petitioner was likely to succeed on his claim that his detention without a hearing violated due process.  (ECF No. 15.)  The Court ordered Respondents to provide Petitioner with "a bond hearing before a neutral fact-finder at which Respondents bear the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk."  (*Id.*)

On February 26, 2026, an IJ held a bond hearing and denied Petitioner bond.  (ECF No. 16-1; Hg. Rec.)  The IJ issued a one-sentence ruling stating: "[T]he Department has proven by clear and convincing evidence that [Petitioner] is both a danger and a flight risk."  (*Id.*)

On April 21, 2026, during the pendency of these proceedings, the IJ ordered Petitioner removed and denied his applications for relief.  (ECF No. 24-1.)  Petitioner is in the process of filing an appeal of his removal order with the Board of Immigration Appeals ("BIA").[5]  (ECF No. 29-1.)  During the appeal period, Petitioner's order of removal is not final nor executable.

---

[5]    Petitioner has now been detained for over ten months without an income and he cannot afford to pay the $1,030 filing fee for appeal to the BIA.  (ECF No. 29-2.)  Although he repeatedly requests a fee waiver under 8 C.F.R. § 1003.8(a)(3), his attorney attests the BIA has adopted a de facto policy of denying fee waivers for detained individuals regardless of their individual financial circumstances.  (ECF No. 29-1.)  When the BIA rejects his fee waiver, it provides a 15-day cure period to refile the appeal with the fee or a new application for waiver, leading to a cycle of rejections and tolling periods.  (*See id.*)  Petitioner has stated his intention to continue to refile his request for fee waiver, leading to contiguous tolling periods.  (*See id.*)

8 U.S.C. § 1231(a)(1)(B)(i) (removal period begins when order of removal is final); 8 C.F.R. §§ 1241.1(c) (order of removal is not final until the expiration of time for appeal) and 1003.8(a)(3) (tolling appeal period to cure filing fee).

Following the bond hearing, Petitioner filed a motion to enforce this Court's TRO, arguing the bond hearing did not comply with this Court's Order and was constitutionally deficient.[6] (ECF No. 20.)  Additionally, the Petition is fully briefed.[7]  (ECF Nos. 8, 14, 16, 27.) The Court now addresses the sufficiency of the bond hearing and the merits of the underlying Petition.

## II.    MOTION TO ENFORCE THE TRO

Petitioner argues his bond hearing did not comply with due process or this Court's TRO because he was deprived of a meaningful opportunity to be heard.  (ECF No. 20.)  Petitioner makes a variety of arguments as to non-compliance, including that the IJ did not properly apply a clear and convincing standard, the record (consisting of stale convictions and argument about speculative immigration relief) did not support the IJ's decision, and the IJ did not make individualized findings supported by reasoning.  (*Id.*; ECF No. 27.)  Respondents contend there is no evidence that the IJ violated Petitioner's due process rights because she stated the correct standard and found Petitioner to be a danger and flight risk based the record and arguments before her.[8]  (*Id.* at 3–6.)

---

[6]    Petitioner titled his filing a "reply" to Respondents' notice of compliance (ECF No. 20), however, the Court notified the parties that it construed the filing as a motion to enforce and ordered briefing on the motion. (ECF No. 25.) The motion is now fully briefed. (ECF Nos. 26, 27.)

[7]    In ruling on the Petition, the Court considers all arguments in the record, including arguments raised in the briefing on preliminary injunctive relief.

[8]    Respondents also argue Petitioner's motion should be denied because he failed to exhaust his administrative remedies as to the IJ's bond determination.  (ECF No. 26 at 2–3.)  After consideration of the factors articulated in *Puga v. Chertoff*, the Court finds prudential exhaustion is not required here.  488 F.3d 812, 815 (9th Cir. 2007).  The Court is reviewing the bond proceedings to determine whether Petitioner's constitutional rights or this Court's Order have been violated.  An administrative record is not necessary here, nor will waiver encourage bypass of the administrative scheme.  *See Gurpreet S. v. Warden Golden State Annex Det. Facility, et al.*, No. 1:26-CV-00437-TLN-JDP, 2026 WL 1678332, at *3 (E.D. Cal. June 10, 2026) (setting forth this Court's reasoning).  This Court will not delay vindication of Petitioner's constitutional rights and cause further irreparable harm, particularly when Petitioner is currently being denied access

4

A.    Standard of Law

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). If petitioner received all relief required by the court's prior judgment, the motion to enforce should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if petitioner demonstrates respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.*

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8

---

to the administrative process with the BIA's denial of fee waivers. *See supra* note 6; *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981) (finding waiver permissible "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result.").

(N.D. Cal. May 19, 2020)).

     B.  <u>Analysis</u>

  The Court first examines whether the record was sufficient to support the IJ's findings as a matter of law before assessing the IJ's failure to provide any reasoning in issuing her decision.[9] The Court finds the IJ abused her discretion on both counts.

       i.  *IJ's Findings Were Unsupported by the Record as a Matter of Law*

  An IJ abuses their discretion when the record of evidence is legally insufficient to satisfy the standard of proof. *See, e.g.*, *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *10 (E.D. Cal. Oct. 22, 2025) (finding abuse of discretion because evidentiary record could not support a finding of danger). The clear and convincing standard is an intermediate burden of proof that "requires 'an abiding conviction that the truth of [the] factual contentions' at issue is 'highly probable.'" *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (citing *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984)).

  "To determine whether an [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 784 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The non-exhaustive factors include: fixed address in the United States; length of residence; family ties and their connection to available immigration relief; employment history; record of appearance in court; criminal record "including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"; history of immigration violations; attempts to flee; and manner of entry to the United States. *Id.*

  A criminal conviction alone is insufficient to support a finding of dangerousness. *See Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) *abrogated on other grounds* (citing *Guerra*, 24 I. & N. Dec. 37). "Rather, the recency and severity of the offenses *must* be considered." *Id.* (emphasis added).

  Here, the evidentiary record before the IJ was legally insufficient to support either a finding of present danger or flight risk by clear and convincing evidence, as discussed below.

---

[9] Finding relief warranted on these grounds, the Court declines to address Petitioner's additional arguments in favor of judicial economy.

a)      *Present Danger to the Community*

At the bond hearing, the government argued Petitioner was a danger to the community solely as a result of his 20-year-old convictions. (Hg. Rec.)  The government submitted a single piece of evidence to support its argument: the FBI RAP sheet listing Petitioner's convictions. (ECF No. 11-1 at 1–3.)  The RAP sheet does not provide any information as to the factual underpinnings of the convictions, however, it does show the year of the convictions (2005 and 2006), the charges, and notes that all of the convictions were "set aside and dismissed per 1203.4 PC."[10]  (*Id.*)  At the hearing, all parties agreed Petitioner's convictions were dismissed and the IJ confirmed that fact on the record.  (Hg. Rec.)  There was no evidence or discussion as to the facts or circumstances of the 20-year-old charges; whether the controlled substance offense involved marijuana or another substance; no discussion of whether the charges were serious; nor any argument or evidence as to whether Petitioner was likely to reoffend.  (*Id.*)

To mitigate against a finding of danger, Petitioner noted that his convictions were dismissed, occurred over 20 years ago, and that he has not had any other encounters with law enforcement in the last two decades.  (*Id.*)  In support of his argument that he is not a danger, Petitioner submitted that he is a 34-year member of his community, who has maintained stable residence and employment as a welder and machine operator, and he provided letters of support from his family.  (*Id.*)  Petitioner pointed out that there was no evidence or argument that Petitioner is currently a danger.  (*Id.*)

Considering the totality of the record before the IJ, even under a deferential standard, there is insufficient support as a matter of law for finding it "highly probable" that Petitioner is a present danger to the community.  *See Mondaca-Vega*, 808 F.3d 413 at 422.  Petitioner's stale, dismissed convictions cannot alone support a finding of dangerousness.  *See Singh*, 638 F.3d at 1206; *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) ("Where Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and

---

[10]      To the extent Respondents may argue that the admitted Form I-213 (ECF No. 19 at 2–5) is also evidence of danger, the information contained there is duplicative of the RAP sheet.

the denial of bond was inappropriate."). The IJ was also required to consider the "recency and severity" of the offenses. *Singh*, 638 F.3d at 1206 (recency and severity "*must* be considered") (emphasis added). Yet, at the hearing and in the IJ's order, there was no discussion of these factors. (ECF No. 16-1; Hg. Rec.) While there was no evidence of present danger before the IJ, Petitioner submitted mitigating evidence showing that he is presently a stable, supported, and law-abiding member of the community, and has been for the last two decades. (Hg. Rec.) As the Ninth Circuit warned in *Singh*: "[A] conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then. In such cases, denial of bond on the basis of criminal history alone may not be warranted." 638 F.3d at 1206. That is the exact circumstance here. Therefore, the record does not support a finding of danger as a matter of law and the IJ thus abused her discretion in failing to properly apply the clear and convincing standard.

The IJ's repetition of the clear and convincing standard does not cure her error here. (*See* Hg. Rec.) Although, generally, a court may rely on an IJ's statement of the proper standard as application of that standard, when something is "amiss," like the IJ "fails to mention highly probative or potentially dispositive evidence," the court need "not credit its use of a 'catchall phrase' to the contrary." *Martinez*, 124 F.4th at 785 (citing *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011)). Here, the IJ did not discuss any evidence, let alone probative evidence, or provide any reasoning or explanation, nor did she refer to any facts in rendering her decision. Therefore, the Court does not rely on her recitation of the standard as evidencing its proper application. Repetition of the standard did not magically make the hearing constitutionally compliant. Rather, "the IJ's invocation of the clear and convincing standard functioned as 'lip service' to a heightened standard that the IJ did not then abide[.]" *See Y.S.G.*, 2025 WL 2979309, at *9 (citing *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016)).

b)    *Flight Risk*

For similar reasons, the IJ's finding as to flight risk is likewise unsupported by the record as a matter of law. At the hearing, the government again relied on Petitioner's 20-year-old convictions for two purposes: to show a warrant was issued for Petitioner in relation to those

8

charges (at some point, for an unknown purpose) and for the contention that immigration relief for Petitioner is speculative because his convictions were not vacated under a particular California law that allows for immigration relief. (Hg. Rec.) As to the vacatur of convictions, the IJ confirmed her understanding of the government's argument. (*Id.*) Petitioner explained that a public defender is currently assisting him in seeking dismissal of his convictions under the correct California statute to open the door to immigration relief. (*Id.*) The IJ did not confirm her understanding of Petitioner's active efforts to correct the barrier to immigration relief. (*Id.*) In support of finding that Petitioner is not a flight risk, Petitioner made the showing that he has maintained a stable residence and employment, is a long-term member of his community of 34 years, has deep familial ties in the United States including children, siblings, and parents, and he submitted letters of support including financial information. (*Id.*)

At the hearing and in the order, the IJ did not discuss any of the *Guerra* factors, let alone those factors related to flight risk. (*Id.*; ECF No. 16-1.) There was also no discussion as to the likelihood that Petitioner would attend immigration hearings. (Hg. Rec.) On the record, the IJ stated that she did not think any amount of bail would mitigate her conclusory finding of flight risk, without providing any reason. (*Id.*)

Once again, the record here was legally insufficient to find it "highly probable" that Petitioner is a flight risk. *See Mondaca-Vega*, 808 F.3d 413 at 422. The only evidence available to the IJ to make such a finding was the argument as to speculative immigration relief and a two-decades old, long-resolved warrant — wholly insufficient showings in light of Petitioner's mitigating evidence. *See*, *e.g.*, *Doroteo-Chavez v. Noem*, No. 2:26-CV-00049, 2026 WL 1031190, at *7 (D. Nev. Apr. 16, 2026) (finding abuse of discretion where IJ failed to reference or reflect consideration of any of the *Guerra* factors and instead denied bond based only on a conclusory statement of finding flight risk); *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654, 2026 WL 1623154, at *8 (W.D. Wash. June 5, 2026) (finding abuse of discretion where IJ "failed to provide rationale for her finding of flight risk and failed to engage whatsoever with the factors weighing against such findings."); *Alcaraz Garcia v. Hernandez*, No. 2:26-CV-01432, 2026 WL 1724216, at *7 (W.D. Wash. June 15, 2026) (finding abuse of discretion "[e]ven accepting the

9

IJ's conclusion that petitioner's claims for relief could be considered 'weak' [because] the IJ provided no rationale for the conclusion that, under petitioner's circumstances, he would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings."). Accordingly, the IJ improperly applied the clear and convincing standard and her finding of flight was abuse of discretion.

### ii.   IJ's Failure to Explain Findings

When an IJ's decision is "arbitrary, irrational, or contrary to law," it is an abuse of discretion. *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)). An IJ abuses their discretion when they fail to explain the reasoning for their findings. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] its reasoning").

Here, the IJ to failed to provide any explanation or reasoning for her conclusory findings. The IJ issued an order with a single sentence. (ECF No. 16-1 ("[T]he Department has proven by clear and convincing evidence that [Petitioner] is both a danger and a flight risk.").) Neither the written order nor the audio recording of proceedings provides any insight into the IJ's reasoning, factors considered, evidence weighed, or factual support for either finding. (*See id.*; Hg. Rec.)

Respondents do not argue otherwise. (*See generally* ECF No. 26.) Indeed, this Court directed Respondents to brief the specific issue of the IJ's failure to provide reasoning in support of her findings in their response to the motion to enforce. (ECF No. 25.) While Respondents opposed the motion, they failed to provide any argument or authority as to the IJ's lack of

10

explanation or reasoning in support of her findings.  (ECF No. 26.)

Moreover, there is no indication anywhere in the record that the IJ considered any of Petitioner's evidence.  "Meaningful evaluation of mitigation evidence relevant to danger is necessary to ensure that the high burden of the clear and convincing standard is demonstrated in fact, not in theory."  *Y.S.G.*, 2025 WL 2979309, at *10 (cleaned up) (citing *Obregon v. Sessions*, No. 17-CV-01463, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017)); *Singh v. LaRose*, No. 26-CV-1425, 2026 WL 1387428, at *6 (S.D. Cal. May 18, 2026) (finding abuse of discretion from IJ's failure to consider highly probative evidence); *cf. Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011) (holding in another context of immigration court decision making "where potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence").

Nor did the IJ discuss any of the *Guerra* factors, which under BIA precedent provides the standard factors for finding danger and flight.  *See Martinez*, 124 F.4th 775 at 84; *see also Perez Velasquez v. Bondi*, No. 26-CV-01759, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (finding IJ's failure to consider or apply the *Guerra* factors, while relying on minimal evidence bearing little relevance to findings and ignoring all evidence in Petitioner's favor, was abuse of discretion, even where it was the noncitizen's burden to prove he was not a danger or flight risk by a preponderance of the evidence.)

Thus, the Court finds the IJ again abused her discretion in issuing conclusory findings without any explanation or meaningful evaluation of Petitioner's evidence.  To be clear, this Court is not re-weighing factors or second-guessing the IJ.  Nor could it, without any idea as to what the IJ weighed or how she arrived at her determination in the first instance.  That is the problem.  The Court merely finds that the IJ improperly applied the standard to the record before her, and without an explanation, reasoning, or evidence to support the findings, the IJ's decision was arbitrary and thus constitutes an abuse of discretion.  *See Bonilla*, 840 F.3d at 581.

The IJ's abuses of discretion deprived Petitioner of his due process rights and the IJ's failure to properly apply the clear and convincing standard violated this Court's TRO. Accordingly, the Court GRANTS Petitioner's motion.

11

### III.   PETITION FOR WRIT OF HABEAS CORPUS

#### A.   Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

#### B.   Analysis

Petitioner alleges that his prolonged detention without a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16–17.) Initially, Respondents argue Petitioner is not entitled to relief because he is subject to mandatory detention under 8 U.S.C. § 1226(c). (ECF No. 8.) Respondents later argue the Petition should be dismissed as moot because Petitioner received a bond hearing in accordance with the Court's Order and there is no remaining controversy. (ECF No. 16.) The Court begins with Respondents' claim as to mootness before turning to the merits of the Petition.

##### i.   Mootness

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). And a case "becomes moot only when it is impossible for a

12

court to grant any effectual relief whatever to the prevailing party." *United States v. Yepez*, 108 F.4th 1093, 1099 (9th Cir. 2024) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Respondents' assertion of mootness misunderstands the nature of preliminary relief. *See Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) ("Preliminary injunctions [] do not conclusively resolve legal disputes."). This Court granted Petitioner temporary relief pending final resolution on the merits of the Petition. As the Court found above, Respondents failed to provide a constitutionally-compliant bond hearing, thus he continues to seek appropriate relief. Additionally, a live controversy still exists over the procedural due process rights owed to Petitioner. Unless Respondents mean to concede they violated Petitioner's due process rights, the Petition remains ripe for resolution.

ii.  *Fifth Amendment Due Process Clause*

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As to the first step — liberty interest — this Court has already found Petitioner possesses a liberty interest protected by due process.[11] (*See* ECF No. 15 at 4–6.) The Court incorporates its reasoning and analysis from the TRO. (*Id.*) Respondents have not put forth any argument or

---

[11] Petitioner's non-final order of removal does not alter this Court's analysis. While Petitioner's liberty interest may be diminished if his order of removal becomes final, he is still entitled to procedural safeguards in his removal proceedings while he is in this country. *Zadvydas*, 533 U.S. at 693–94.

13

authority on this issue to alter the Court's findings.  (*See* ECF Nos. 8, 16, 24, 26.)

As to the second step — what procedures or process is due before depriving Petitioner of his liberty interest — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a substantial private interest in remaining free from detention, as discussed above.  Petitioner has established a life in the United States over the last three decades, including two decades since serving his sentence.  (ECF No. 1 at 5.)  Despite that, Petitioner has now been detained for over ten months without any constitutionally-adequate opportunity to be heard as to the justification of his detention.  (*Id.* at 2; ECF No. 11-1 at 9.)  During his detention, he has been separated from his family who he supports emotionally, physically, and financially.  (ECF No. 1 at 6.)  And he has not been able to work to support his family.  (*Id.*)  Thus, Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); *Perera II*, 598 F. Supp. 3d at 745 (quoting *Rajnish v. Jennings*, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020) ("Any length of detention implicates the same fundamental liberty interest in remaining free from imprisonment.") (cleaned up)).

Second, the risk of erroneous deprivation is considerable given that Petitioner has not received any sufficient procedural safeguards.  "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community."  *Carballo*, 2025 WL 2381464, at *7 (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).  Here, the government failed to provide Petitioner notice or a pre-deprivation hearing to determine whether his detention was justified.  The government also initially denied Petitioner a bond hearing as a matter of policy.  Then, when this Court ordered a bond hearing and required the government to make a

14

showing as to the necessity of Petitioner's detention, as discussed above, it could not.  Notably, Petitioner was complying with immigration authorities at the time of his arrest.  Where no procedural safeguards have been provided, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Bond hearings are routine processes for Respondents.  Any delay in detention (if justified) for the time to provide a constitutionally-adequate hearing would have been minimal.  Any burden associated with the provision of these safeguards does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.  Respondents put forth no legitimate justification in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Respondents were required to provide Petitioner notice and a pre-deprivation hearing before a neutral decisionmaker.  The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See* ECF Nos. 8, 16, 26.)

Here, Petitioner was not provided notice or a pre-deprivation hearing.  Instead, he was arrested, without warning, at a USCIS interview for his adjustment of status, while he was lawfully pursuing immigration relief and his contact information was well-known to the government.  Over the subsequent ten months of detention, Petitioner was denied two constitutionally-sufficient bond hearings, even after said hearings were ordered by this Court.  Therefore, Respondents have repeatedly violated the Fifth Amendment and Petitioner's procedural due process rights.

Having found repeated and compounding due process violations, and in light of Respondents' failure to justify Petitioner's detention as a matter of law, the only just relief for Petitioner in this case is release.

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  Petitioner's Motion to Enforce the TRO (ECF No. 20) is GRANTED.

3.  Respondents' Request to Lift the "No-Transfer" Order (ECF No. 24) is DENIED.

4.  Respondents must IMMEDIATELY RELEASE Petitioner Jose G.M.L. (A# 234-220-551) from custody on an order of supervision.  At the time of release, Respondents must return all of Petitioner's documents and possessions and **provide him a copy of this Order**. **By July 10, 2026,** Respondents must file a **notice of compliance** with this provision.

5.  Respondents are ENJOINED from re-detaining Petitioner unless circumstances materially change or until Respondents may lawfully execute Petitioner's order of removal and, in re-detaining, Respondents must provide Petitioner a minimum of seven days' pre-deprivation notice and must follow all procedures set forth in 8 C.F.R. §§ 241.4(l) and 241.13(i), and any other applicable statutory and regulatory procedures to revoke an order of supervision.

6.  The Clerk of the Court is directed to serve this Order on the **Golden State Annex**.

7.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 8, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

16